UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ANNA ORTEGA                              CASE NO.  2:25-CV-00653

VERSUS                                   JUDGE JAMES D. CAIN, JR.

P N K LAKE CHARLES L L C                 MAGISTRATE JUDGE DAVID J. AYO

MEMORANDUM ORDER

Before the court is a *Daubert* Motion to Exclude the Opinions of Plaintiff's Expert

Dr. Derek Lou, filed by defendant PNK Lake Charles LLC ("PNK"). Doc. 23. Plaintiff

Anna Ortega opposes the motion. Doc. 25.

I.
BACKGROUND

This suit arises from plaintiff's stay at L'Auberge Casino Resort, a hotel owned by

defendant in Lake Charles, Louisiana. Doc. 1, att. 2. Plaintiff was a guest of the hotel on

February 11, 2024. While she was taking a shower, a plumbing defect allegedly caused the

water to become scalding hot in a brief time. Doc. 25, att. 1, pp. 11–12. She testified that

she used her leg to turn off the water. *Id.* She filed an incident report with the hotel that

day, in which she complained of "injury on right arm and back." Doc. 23, att. 4. She also

visited Fast Pace Health Urgent Care in Lake Charles on the date of the incident. Doc. 23,

att. 5. There she complained of a burn to the right shoulder and neck. *Id.* The provider

recorded redness over her upper back but only diagnosed her as "Person with feared health

complaint in whom no diagnosis is made." *Id.* The provider recommended that she moisturize with lotion and use aloe vera gel for cooling and comfort. *Id.*

Plaintiff testified that her leg did not begin to bother her until about two days after the incident. Doc. 23, att. 7, pp. 37–38. She also stated that her leg wound blistered, but she never noticed any blistering or scarring on her upper back area. *Id.* at 38, 47. She treated her arm/upper back and leg with aloe vera. Doc. 25, att. 1, pp. 35–36. On March 21, 2024, she was told by defendant's adjuster to obtain and submit more documentation of her injuries. Doc. 25, att. 7, ¶¶ 8–9. She next visited Access2Health Urgent Care in Beaumont, Texas, on March 26, 2024. Doc. 23, att. 6. There she made her first recorded complaint of an injury to her leg:

> [Plaintiff] lastly requesting evaluation of what the ot states and describes as an old burn injury with hot water in a shower. [Plaintiff] states the water went from hot to cold rapidly causing the injury to the anterior mid left lower leg. Onset of the injury was Feb 14th [plaintiff] states and occurred in Lake Charles. [Plaintiff] reports she was seen at a clinic there at that time. [Plaintiff] denies problems to the area. Reports needing documentation of the wound. [Plaintiff] informed that since the injury is old and healed that documentation of the injury would be better obtained from the clinic that she went to at the time of the incident in February. No noted redness, swelling, warmth, drainage, or signs of infection noted to the site. . . . Mild skin discoloration as noted in the ATTACHED PICTUR[E]S.

*Id.* at 4–5. She was diagnosed with "Wound healed – No Complications noted." *Id.* at 6.

Plaintiff testified that defendant's adjuster directed her to begin treating with a dermatologist. Doc. 25, att. 1, p. 49. She visited Heights Dermatology and Aesthetic Center in Beaumont, Texas, on August 30, 2024. There the provider, nurse practitioner Audrey Martinez, recorded a "burn 2nd degree on the left distal pretibial region" presenting with "[b]right red erythema and edema with vesicles or blisters." Doc. 25, att. 4, p. 4. She also

diagnosed plaintiff with a skin infection, presenting with "[i]mpetiginized patches," over the area of the leg burn. *Id.* at 5. At her deposition, Ms. Martinez stated that she relied on plaintiff's statement that she had been diagnosed with a second degree burn at an urgent care but agreed with the diagnosis based on her observation of plaintiff's skin. Doc. 23, att. 2, pp. 13–14. She testified that she would be surprised if the burn occurred more than two months before she encountered plaintiff, because it was still "semi scabbed over." *Id.* at 26. After hearing that the leg showed "no redness, swelling, warmth, [or] drainage" at plaintiff's March 2024 urgent care visit, Ms. Martinez stated that this "[did] not add up" to what she saw in her clinic because the leg was still red and swollen when she saw plaintiff in August 2024. *Id.* at 31. Accordingly, she agreed that the burn presented at the August 2024 clinical encounter more likely occurred after plaintiff's March 2024 urgent care visit. *Id.* at 32.

Plaintiff filed suit in the 14th Judicial District Court, Calcasieu Parish, Louisiana, on January 31, 2025, raising claims against defendant under Louisiana law.[1] Doc. 1, att. 2. Defendant removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. The case is set for jury trial before the undersigned. Plaintiff has retained Dr. Derek Lou, a board-certified plastic surgeon with advanced training and decades of

---

[1] The incident is described as follows in the pleadings:

> While taking a shower, a defect in the plumbing caused the water to turn dangerously hot extremely quickly. In the time it took the Plaintiff to turn on the water and test for warmth, to then step into the shower, the water had become scalding hot and caused a large second degree burn on Plaintiff's lower left leg, which was the first part of her body that she put in contact with the water.

Doc. 1, att. 2, ¶ 6. Defendant argues that this account differs materially from what plaintiff described in her deposition and medical records, in that it omits mention of her upper body being burned or of her use of her leg to turn off the water. The court finds insufficient cause to reject plaintiff's testimony. Plaintiff's accounts where provided in her own words appear consistent and plaintiff did not draft her own pleadings.

experience in the management of burn injuries, to provide an opinion on her injuries. Dr. Lou opines that plaintiff sustained second degree burns to her lower left leg and right shoulder/upper back as a result of the February 2024 shower incident. Doc. 23, att. 9. Defendant now moves to exclude that testimony under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Doc. 23. Plaintiff opposes the motion. Doc. 25.

## II.
### LAW & APPLICATION

### A. Governing Law

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[2] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

---

[2] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

### B. Application

Defendant does not dispute Dr. Lou's qualifications. Instead, it maintains that his opinions do not adequately account for the discrepancies in the appearance of plaintiff's leg injury as it presented to different providers and for the lack of evidence that the shower water was hot enough or on for long enough to cause the claimed injury. Additionally, it maintains that neither the medical records nor plaintiff's own account support Dr. Lou's opinion that plaintiff suffered a second degree burn to her upper back/shoulder. Dr. Lou, who examined the plaintiff in April 2026, stated that plaintiff "overall has been recovering well, but still has occasions of swelling and 'hotness' to both areas, with associated itching and tingling" but without any recurrent infection. Doc. 23, att. 9, p. 2; *see* doc. 25, p. 10 (date of examination). He recorded hyperpigmented scars on her right shoulder/upper back and lower left leg. *Id.* As to causation, he stated:

There is a clear causality between the scalding water and her burn injuries. Although the exact temperature of the hot water at the time was not determined, commercial hot water heaters may be heating water up to 140F, which can cause burns with exposure times of 3–5 seconds. Even if the water had been 130–139F, exposure time for partial thickness burns can be less than 17 seconds. A 125F exposure could similarly burn at up to 2 minutes.

*Id.* at 3. Finally, he admitted that it was "puzzling" that she would have persistent open burn wounds on her leg six months after the incident. He noted, however, that prolonged use of Silvadene ointment could slow wound healing and cause inflammation. *Id.*

Defendant first maintains that there is no evidence that plaintiff was exposed to water that was hot enough to cause a second-degree burn within seconds. But defendant likewise presents no evidence of the highest possible temperature that could have emitted from its allegedly defective commercial water heater. In its 30(b)(6) deposition defendant testified that, according to the applicable code, the boiler was set for a minimum temperature of 130 degrees Fahrenheit and the water heater at 120 to 125 degrees. Doc. 25, att. 8, pp. 22–24. Ms. Martinez testified that a second-degree burn could occur at ten to fifteen seconds of exposure to 125 degree water.[3] Doc. 25, att. 3, pp. 37–38. Ms. Ortega's account of the incident, including using the affected leg to turn off the hot water, provides a plausible explanation for several seconds of exposure. Finally, Ms. Martinez admitted that, in her experience, the larger blisters on a second-degree burn might not appear until

---

[3] Defendant relies on a sticker attached to the water heater, which states both that "Water temperatures over 125ºF can cause severe burns instantly or death from scalds" and that it takes "about 30 seconds" for water at 130ºF or "more than 5 minutes" for water at 120ºF "to produce 2nd & 3rd degree burns on adult skin." Plaintiff is not claiming a third-degree burn. To the extent defendant believes the information on this warning otherwise undermines Dr. Lou's opinions, it may be used as fodder for cross-examination.

the next day. *Id.* at 19–20. This supports Ms. Ortega's failure to notice her lower limb injury immediately after the incident.

As for the burn's delayed healing, defendant correctly points out that there is no record that plaintiff ever used Silvadene. Accordingly, Dr. Lou's hypothesis regarding prolonged Silvadene usage is unsupported. But the infection itself might explain any discrepancies. The photographs from the scanned medical records do not show much detail, and Ms. Martinez's deposition was taken eighteen months after this visit. *See* doc. 25, att. 4, p. 8. While her medical records describe blisters and redness, they also note an active infection of the wound and associated itching. The March 2024 urgent care records reflect that her leg still showed discoloration, consistent with her story of a six-week-old burn, but that the area otherwise appeared healed. Any intervening infection, especially with "[i]mpetiginized patches," could easily explain blisters, redness, and scabbing appearing at her first dermatology visit in August 2024. Thus, defendant fails to sufficiently undermine the basis of Dr. Lou's opinions on plaintiff's leg injury.

As for the shoulder/upper back injury, Dr. Lou also briefly opined that plaintiff had suffered a second degree burn to this area. Plaintiff testified that this area of her skin never blistered and did not scar. She also never sought any follow-up care after her urgent care visit on the date of the incident. But she has submitted an affidavit stating that she was simply unaware of the scar because it was on her back, along with a photograph of the affected area. Doc. 25, att. 7. Dr. Lou is sufficiently qualified to offer an opinion based on his examination and plaintiff's account of the exposure.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that defendant's *Daubert* Motion

[doc. 23] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 18th day of June, 2026.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE